**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JONATHAN K. SMITH, a member of the
Shinnecock Indian Nation,

                  Plaintiff,                        **ORDER**
                                                                 12-cv-04408 (ADS)(ETB)
            -against-

VINCENT FREDRICO, in his individual
capacity as Patrol Officer, Suffolk County Police
Department, ROBERT TROTTA, in his
individual capacity as Detective, Suffolk County
Police Department, and JOHN DOES 1–10,

                  Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**Moore International Law Office**
*Attorneys for the Plaintiff*
45 Rockefeller Plaza
Suite 2000
New York, NY 10111
        By:     Scott M. Moore, Esq., of Counsel

**Office of the Suffolk County Attorney**
*Attorneys for the Defendant Vincent Fredrico*
H. Lee Dennison Building
P.O. Box 6100
100 Veterans Memorial Highway
Hauppauge, NY 11788-0099
        By: Assistant Suffolk County Attorney Chris P. Termini

**United States Attorney, Eastern District of New York**
*Attorneys for the Defendant Robert Trotta*
610 Federal Plaza, 5th Floor
Central Islip, NY 11722-4454
        By: Assistant United States Attorney Diane C. Leonardo-Beckman,
            Assistant United States Attorney Thomas A. McFarland

1

**SPATT, District Judge.**

On September 4, 2012, the Plaintiff, a member of the Shinnecock Indian Nation, initiated the present action, arising from an allegedly illegal stop and search of the Plaintiff's truck that occurred on July 21, 2012. The Plaintiff is bringing several causes of action, including violations of the Indian Religious Freedom Act of 1978 and the Fort Albany Treaty, as well as civil rights actions pursuant to 42 U.S.C. §§ 1982, 1983, 1985, and 1986. In addition, the Plaintiff has filed a motion for a preliminary injunction, requesting an accounting and return of all property seized from the Plaintiff during this traffic stop, namely $34,623.00 in cash and approximately 2,100 cartons of cigarettes.

On October 6, 2012, the Court referred this matter to United States Magistrate Judge E. Thomas Boyle for the purpose of holding a hearing and issuing a Report and Recommendation addressing the Plaintiff's motion for preliminary injunction and addressing such other related issues as Judge Boyle found appropriate.

Following a hearing on October 19, 2012, Judge Boyle issued a Report and Recommendation on November 20, 2012, which found that the Plaintiff had not established that he would suffer irreparable harm absent a preliminary injunction. Specifically, Judge Boyle found that there was nothing in the record to suggest that the Plaintiff could not be adequately compensated through the payment of monetary damages in the event that it is ultimately determined that his property was wrongfully seized by the Defendants. With regard to the $34,623.00 in cash seized, Judge Boyle's Report stated that "it is self-evident that the [P]laintiff can be compensated for this temporary deprivation with monetary damages, and the [P]laintiff is therefore ineligible for injunctive relief with regard to this portion of the seized property." (DE 27 at 5.) With regard to the cigarettes, Judge Boyle found them to be fungible based on relevant

precedent, and thus found that monetary damages would be sufficient to compensate the Plaintiff for any potential loss with regard to the cigarettes that were seized, so that the Plaintiff was not entitled to a preliminary injunction. The Plaintiff Smith filed a number of objections to Judge Boyle's Report and Recommendation.

After reviewing the Plaintiff's objections, this Court adopts the Report and Recommendation in its entirety and denies the Plaintiff's request for a preliminary injunction.

## I. DISCUSSION

### A. Standard of Review

A court is required to make a de novo determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "de novo determination" in Section 636(b)(1) — as opposed to "de novo hearing" — was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'" Id. at 674, 100 S. Ct. 2406. Rather, in making such a determination, a court may, in its discretion, review the record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n.3 (2d Cir. 1990). Furthermore, a court may, in its sound discretion, afford a degree of deference to the magistrate's Report and Recommendation. See Raddatz, 447 U.S. at 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."

Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96 Civ. 324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" Fairfield Financial Mortg. Group, Inc. v. Luca, No. 06 Civ. 5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011).

**B. As to Whether the Defendant Trotta's Opposition Papers May be Considered**

As an initial matter, the Court must determine whether it may consider the Defendant Robert Trotta's opposition papers to the instant application for a preliminary injunction. According to the Plaintiff, Trotta has failed to file an answer to the verified complaint which was served upon him on September 7, 2012. (DE 9.) In addition, the Plaintiff has filed for a certificate of default as to Defendant Trotta (although it was rejected for noncompliance with the Local Rules), and has demonstrated his desire to move for a default judgment against him.

On the other hand, Defendant Trotta has taken the position that he is a federal employee because he was a member of the federal task force with the Federal Bureau of Investigation ("FBI") at the time of the incident. (See Declaration of Diane C. Leonardo, Exhibit "A," Letter dated September 28, 2012; see also Exhibit "B," Oath of Office dated February 27, 2012.) See Aikman v. Cnty. of Westchester, 691 F. Supp. 2d 496, 498 (S.D.N.Y. 2010) ("[S]tate and local law enforcement officers designated as federal task force members are treated as federal employees for the purposes of any federal tort liability statute . . . Courts within this Circuit have interpreted [5 U.S.C.] § 3374(c) to extend to civil rights actions, and consequently have treated deputized officers as federal employees for purposes of such actions."). In this regard, Assistant

4

United States Attorneys Diane C. Leonardo and Thomas A. McFarland have filed a notice of appearance and they are litigating this matter on Trotta's behalf.

The Plaintiff opposes the United States' representation that Detective Trotta was a federal task force member at the time of the incident alleged in the Complaint. (See Plaintiff's Objections, p. 2, n.1.) This is an issue that may ultimately need to be resolved, and is problematic for the reason that the Plaintiff has not effectuated proper service on the federal government and the Plaintiff has evidenced an intention to move for a default judgment against Trotta. Regardless, this issue has not yet been resolved, and due to the time sensitive nature of the present motion, the Court will determine the merits of the Plaintiff's objections while taking into consideration Defendant Trotta's opposition. Contrary to the Plaintiff's assertion, any request for a default judgment was not considered by Judge Boyle and thus is not presently before the Court in the context of this Order.

If the Plaintiff still wishes to pursue his request that a default judgment be entered against the Defendant Trotta, he is directed to file a memorandum of law by January 31, 2013, not to exceed ten pages, explaining the basis for this position. He must do so prior to filing a second request for a certificate of default. The Defendant Trotta will be permitted to submit an opposition by February 21, 2013, also not to exceed ten pages. Any reply, to be filed by March 7, 2013, should not exceed five pages.

**C. As to the Plaintiff's Objections**

The Plaintiff objects to Judge Boyle's Report and Recommendation on several grounds. The Court will address each objection in turn.

First, Smith takes issue with the Report's introduction. Specifically, he objects to the Report framing the motion as limited to only seeking return of seized property. Smith contends

that the motion is broader, as it also seeks "[p]reliminary and permanent injunctive relief in favor of [the P]laintiff enjoining application of federal and state law on Shinnecock Indian Reservation lands." (Motion at 4.) However, the introduction of the Report is just that—a general overview of the requested relief. The introductory statements do not equate with Judge Boyle's findings and/or recommendations. Therefore, this objection is one of form over substance and thus the Court dismisses it as irrelevant. To the extent that this specific request for injunctive relief affected Judge Boyle's actual findings and/or recommendations, the Court will address those contentions further below.

Second, the Plaintiff has put forth objections to the portion of the Report's entitled "Background." He asserts that the Background does not contain the more detailed facts of the traffic stop that were pled in the verified complaint and does not mention any documentary factual evidence submitted by the Plaintiff, such as the Bill of Lading showing the shipment of the cigarettes to the Shinnecock Smoke Shop on Shinnecock Indian Territory (Ex. A), or the invoices itemizing the shipment in the Bill of Lading. (DE 17.) However, the Court does not see any error in Judge Boyle's characterization of the facts in the Background section of his Report. While he did not include certain information that was pled in the complaint or point to specific documentary evidence, there is no obligation to include every single fact relevant to the litigation in a Report and Recommendation.

Rather, Judge Boyle appeared to consider all facts that were necessary to determine the motion for a preliminary injunction, namely whether the Plaintiff could demonstrate irreparable harm. The main issue that was relevant to that inquiry was the nature of the seized property. The details of the traffic stop would only be relevant to the likelihood of success question, which Judge Boyle rightly declined to consider, because "where a movant is unable to overcome the

6

first step of the analysis by establishing that he will suffer irreparable harm absent the issuance of the injunction, the Court need not reach the second step." (DE 27 at 8.)

In addition, the Plaintiff objects to the Report's usage of the word "contraband", which he claims appears nowhere in the Complaint and appears in no evidence before the Court. Nevertheless, Judge Boyle issued his Report solely on the basis of the written submissions, as all of the parties consented to proceed without the need for an evidentiary hearing. In reaching his recommendation, Judge Boyle was not constricted to rely solely on the allegations in the Complaint. Instead, he was permitted to also consider the allegations set forth by the Defendants in their memoranda, which appears to be the source of the term "contraband". (DE 27 at 2–3 ("Fredrico maintains that the cigarettes are "per se contraband" and opposes plaintiff's request for relief. (Tr. at 13.) Trotta also maintains that the seized cigarettes are contraband, specifically in violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*; see Lawrence v. Town of Brookhaven Dep't of Housing, Comm. Dev. & Intergovernmental Affairs, No. 07 Civ. 2243, 2007 WL 4591845, at *1 (E.D.N.Y. Dec. 26, 2007) (noting that a court may consider and rely on facts outside of the Complaint "in considering Plaintiff's request for a preliminary injunction, the Report and Recommendation, and Plaintiff's objections to the Report and Recommendation."); Johnson v. Newport Lorillard, No. 01 Civ. 9587, 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.").

Moreover, Judge Boyle did not rely on this characterization of the cigarettes as contraband in reaching his recommendation. See Klein v. City of New York, No. 10 Civ. 9568, 2012 WL 546786, at *3 (S.D.N.Y. Feb. 21, 2012) ("However, the Report and Recommendation

7

did not rely on the characterization of the personnel action at issue as a 'termination.'"). Therefore, the Court sees no error in the usage of this word in the Report.

Third, with regard to the Report's conclusions of law, Smith contends that the Report erred in determining that damages are available as a remedy at law, when the relief of compensatory damages for the seized property is not pled in any of the twelve counts. To be clear, the Complaint does request compensatory damages in several of the counts. However, the requests for compensatory damages are largely in connection with the Plaintiffs' Section 1983 causes of action for Fourth Amendment violations. Regardless, a claim for the specific compensatory damages related to the seized property need not be pled in the Complaint. The absence of such a request in the Complaint does not demonstrate that one is unavailable. "[T]he mere fact [that the P]laintiff[] might prefer the equitable remedy over the legal remedy does not make the legal remedy inadequate as a matter of law." Doe v. Texaco, Inc., No. 06 Civ. 2820, 2006 WL 2053504, at *3 (N.D. Cal. July 21, 2006). Smith has not provided the Court with any precedent that would dictate otherwise. The Plaintiff has still failed to establish irreparable harm or explain why money damages would fail to make him whole. As Judge Boyle found, "[o]n the record before this Court, there is no evidence that the cigarettes at issue are in any way unique or otherwise irreplaceable, and there is therefore no basis upon which to conclude that [the P]laintiff could not adequately be compensated for the loss of these particular cigarettes with money damages." (DE 27 at 6.)

Fourth, the Plaintiff asserts that the Report erred in determining that damages are available as a remedy at law, because Judge Boyle did not consider the Eleventh Amendment sovereign immunity bar to compensatory damages for seized property. However, this issue was not raised before the Magistrate Judge, and therefore will not be considered by this Court. See

Wesley v. Alexander, No. 99 Civ. 2168, 2005 U.S. Dist. LEX IS 43457, at *16–17 (S.D.N.Y. April 25, 2005) (noting that where counsel sought to introduce evidence and arguments he failed to raise before the magistrate judge, in a supplemental report and recommendation the magistrate judge observed that "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge"); Paterson–Leitch Co. v. Mass. Municipal Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.").

In any event, it appears that Defendant Robert Trotta was a member of a federal task force at the time of incident, and thus may be considered to be a federal actor. The Eleventh Amendment is not applicable to the federal government. See Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004) ("By its terms, the Eleventh Amendment precludes suits in law or equity, commenced or prosecuted against *one of the United States* by Citizens of another State…") (emphasis added); see also United States v. Nordic Village Inc., 503 U.S. 30, 32, 112 S. Ct. 1011, 1014, 117 L. Ed. 2d 181 (1992) (noting that "the Eleventh Amendment [is] applicable only to the States and not to the Federal Government"). Furthermore, the Eleventh Amendment would only bar suits against the state or state officials in their official capacity. See Ying Jing Gan v. City of N.Y., 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. . . As to a claim brought against him in his individual capacity,

however, the state official has no Eleventh Amendment immunity.") (internal citations omitted). This suit is against Vincent Fredrico in both his individual and official capacities. Therefore, this objection is also without merit.

Fifth, Smith claims that the Report erred in determining that the constitutional violations do not constitute irreparable harm *per se*. This objection is the one with the most teeth and necessitates a careful analysis.

Judge Boyle recognized that the Second Circuit has held that the deprivation of a constitutional right may constitute *per se* irreparable harm in the context of a preliminary injunction. However, where "money damages could make [movants] whole for any loss suffered during this period [of deprivation], their injury is plainly reparable and [movants] have not demonstrated the type of harm entitling them to injunctive relief." Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988). In this regard, he simply found that "[w]here a plaintiff alleging a violation of his constitutional rights seeks a preliminary injunction for what is, 'at its core, a single plaintiff's claim for money damages,' a preliminary injunction should not issue", relying upon Pinckney v. Board of Educ. of Westbury Union Free School Dist., 920 F. Supp. 393, 400 (E.D.N.Y. 1996).

On the other hand, the Plaintiff argues that Savage and Pinckney are narrower than indicated by the Report, and thus do not stand for the proposition that a plaintiff's pleading of a deprivation of constitutional rights cannot constitute *per se* irreparable harm when money damages can make a plaintiff whole.

As a general rule, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights. See, e.g., Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of

10

time, unquestionably constitutes irreparable injury.") (citing New York Times Co. v. United States, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971)); Statharos v. New York City Taxi and Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.") (citing Bery v. City of New York, 97 F.3d 689, 694 (2d Cir .1996)); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) ( "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948, at 440 (1973)); see also Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir.1996) ("The district court . . . properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."). But see Amandola v. Town of Babylon, 251 F.3d 339 (2d Cir. 2001) (acknowledging that the Second Circuit has not always presumed irreparable injury in cases alleging First Amendment violations, and has on occasion required a showing of irreparable harm, but without deciding the issue).

As this Court has previously noted, while the mere assertion of a constitutional injury is insufficient to automatically trigger a finding of irreparable harm, KM Enterprises, Inc. v. McDonald, No. 11 Civ. 5098, 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) (Spatt, J.), where the constitutional deprivation is convincingly shown *and that violation carries noncompensable damages*, a finding of irreparable harm is warranted. Donohue v. Paterson, 715 F. Supp. 2d 306, 315 (N.D.N.Y. 2010) (emphasis added). "In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to monetary damages." KM, 2012 WL 540955, at *3. In Savage, the Second Circuit relied on the fact that the constitutional deprivation was not convincingly shown. See Savage, 850 F. 2d at 67 (noting that while a preliminary injunction may be issued where employees are threatened with

11

discharge for refusing to change their political affiliation, the appellees did not allege that degree of coercion). However, the court also relied on the fact that because "reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury [wa]s plainly reparable." Id. at 68; see Cunningham v. Adams, 808 F.2d 815, 822 (11th Cir. 1987) (finding that even where a plaintiff alleged civil rights violations in the form of race and sex discrimination surrounding the denial of his bid for operation of a concession stand in a municipal airport, the irreparable harm standard was not met because his ultimate injury was lost profits, which could be reimbursed by an award of money damages); see also Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction.").

In short, it appears that the cases in which courts have found irreparable injury by virtue of a constitutional deprivation alone have done so, with certain exceptions, where the protected right has been personal *and* the violation non-compensable. Accordingly, "when 'personal' constitutional rights are violated and the harm that accompanies the violation is remediable or compensable, the damage is not irreparable." E.E.O.C. v. Local 638, No. 71 Civ. 2877, 1995 WL 355589, at *5 (S.D.N.Y. June 7, 1995). See, e.g., Flower Cab Co. v. Petitte, 685 F.2d 192, 194–95 (7th Cir. 1982) (finding that any damage resulting from possible due process violation would be compensable through money damages); Hohe v. Casey, 868 F.2d 69, 73 (3d Cir.), cert. denied, 493 U.S. 848 (1989) (holding that although a violation of First Amendment rights was alleged, the potential damage did not include a chilling effect on First Amendment freedoms and would be fully compensable through restitution or money damages); ACS Enter., Inc. v. Comcast Cablevision of Philadelphia, L.P., 857 F. Supp. 1105, 1110 (E.D. Pa. 1994) (finding that a taking in violation of Fifth Amendment would not constitute per se irreparable harm where

12

monetary damages and injunction would fully remedy the harm). Cf. Parents' Ass'n of P.S. 16 v. Quinones, 803 F.2d 1235, 1242 (1986) (finding loss of First Amendment freedoms in violation of the Establishment Clause constituted irreparable harm).

Therefore, the Court finds that there was no legal error when Judge Boyle required the Plaintiff to do more than merely allege a constitutional deprivation. The Plaintiff had to demonstrate that it caused a noncompensable injury to warrant a finding of irreparable harm. Consequently, the question that must be answered, which was not addressed in Judge Boyle's Report, is whether the assertion of a Fourth Amendment search and seizure constitutional violation results in a noncompensable injury.

The Plaintiff has not provided the Court with any cases to support the theory that the right to be free from illegal search and seizures under the Fourth Amendment, when violated, results in a noncompensable injury. The Court has uncovered one case, Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992), in which the Second Circuit stated: "we agree with the district court—given the fundamental right involved, namely, the right to be free from unreasonable searches—that Covino has sufficiently demonstrated for preliminary injunction purposes that he may suffer irreparable harm arising from a possible deprivation of his constitutional rights." Cf. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (holding that individuals who have suffered a compensable injury through a violation of the rights guaranteed them by the Fourth Amendment may invoke the general federal-question jurisdiction of the federal courts in a suit for damages). However, the circumstances of the Covino case only help to highlight the error in the Plaintiff's logic. In Covino, the injunctive relief requested was to prevent the defendants' policy of conducting visual body-cavity searches of pre-trial detainees. Thus, the imminent harm—the continuing violation of the Plaintiff's

13

Fourth Amendment rights—would be avoided by the injunction the Plaintiff was seeking. Here, the Plaintiff cannot articulate any imminent harm that is caused by the alleged constitutional violation. If the Plaintiff is ultimately successful and his constitutional rights were violated, he will be entitled to the declaratory relief he seeks and will possibly receive a return of his property or the monetary equivalent. Thus, there is no imminent harm that is being caused by the alleged constitutional violation.

As will be explored further below, a portion of the Plaintiff's preliminary injunction motion is to prevent the application of federal and state laws on Shinnecock Indian Reservation lands. However, this requested relief still does not demonstrate how the Plaintiff is suffering some sort of imminent harm that would be rectified if the Court were to grant this broad request. There is no connection here between the asserted constitutional violation and the imminent harm, so that there is no imminent harm *per se*, despite the allegation of a constitutional deprivation.

Thus, the Court ultimately agrees with Judge Boyle and finds that the Plaintiff will not suffer irreparable injury in the absence of the issuance of a preliminary injunction because with regard to the specific injunctive relief requested, he can be made whole by an award of monetary damages. See Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974)).

Finally, the Plaintiff asserts that the Report erred in determining that damages are available as a remedy at law, where injunctive relief was sought in the motion against the application of law to Shinnecock Indian Reservation Lands. Specifically, Count Twelve seeks "[p]reliminary and permanent injunctive relief in favor of plaintiff enjoining application of

14

federal and state law on Shinnecock Indian Reservation lands." (See Compl., Prayer for Relief, ¶ 12.) To be accurate, the Report makes no mention of this requested relief, which is included in the Complaint and listed on the last page of the Plaintiff's memorandum in support of his motion for a preliminary injunction. However, other than a single mention, the Plaintiff does not discuss this broadly worded request in his memorandum and still has not demonstrated to the Court how the application of federal and state law on Shinnecock Indian Reservation lands results in irreparable harm.

More importantly, there is no likelihood of success on the merits of this claim for either preliminary or permanent injunctive relief. As the Defendant Trotta has pointed out, the "Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as plenary and exclusive." E.g., Washington v. Confederated Bands and Tribes of Yakima Nation, 439 U.S. 463, 470-471, 58 L. Ed. 2d 740, 99 S. Ct. 740 (1979). The Supreme Court has rejected Native American retailers' suit to enjoin the enforcement of New York State tax laws on the reservations. See Dep't of Taxation & Fin. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 78, 114 S. Ct. 2028, 129 L. Ed. 2d 52, (1994). The Second Circuit has held that the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., is applicable to Native Americans selling contraband cigarettes. See United States v. Morrison, 686 F.3d 94, 105 (2d Cir. 2012) ("We reject Morrison's argument and hold that the CCTA, in conjunction with New York Tax Law § 471, justified Morrison's conviction in this case."). This Court has also previously rejected a challenge to the applicability of New York State law to the Shinnecock Indians. Bess v. Spitzer, 459 F. Supp. 2d 191, 200 (E.D.N.Y. 2006) ("In addition, the Court finds that the plaintiff is estopped from re-litigating the issue of whether

New York State has jurisdiction to enforce the provisions of the New York State Tax Law and the New York City Administrative Code against him.").

Therefore, the objection to Judge Boyle's denial of the Plaintiff's motion for a preliminary injunction on the basis that the Report erred in determining that damages are available as a remedy at law, where injunctive relief was sought in the motion against the application of law to Shinnecock Indian Reservation Lands, is without merit.

## II. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Judge Boyle's Report and Recommendation is adopted in its entirety; and it is further

**ORDERED** that the Plaintiff's motion for a preliminary injunction is denied; and it is further

**ORDERED** that if the Plaintiff wishes to pursue his request that a default judgment be entered against the Defendant Trotta, he is directed to file a memorandum of law not to exceed ten pages, by January 31, 2013, explaining the basis for this position. The Defendant Trotta will be permitted to submit an opposition by February 21, 2013, also not to exceed ten pages. Any reply by the Plaintiff is to be filed by March 7, 2013, and should not exceed five pages.

**SO ORDERED.**

Dated: Central Islip, New York
January 8, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge